UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
KENNY WAT,

        Plaintiff,

  -against-                                      **Decision & Order**
                                                          15-cv-5304(ADS)
CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.
-------------------------------------------------------------------------------x

<u>APPEARANCES:</u>

**Fusco, Brandenstein & Rada, P.C.**
*Attorneys for the Plaintiff*
180 Froehlich Farm Blvd.
Woodbury, NY 11797
        By:     Erin K. McCabe, Esq., Of Counsel

**U.S. Attorney's Office, Eastern District of New York**
*Attorneys for the Commissioner*
271 Cadman Plaza East
Brooklyn, NY 11201
        By:     Matthew Mallioux, Assistant U.S. Attorney

**SPATT, District Judge:**

        On September 14, 2015, the Plaintiff Kenny Wat commenced this civil appeal pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405 *et seq.*, challenging a final determination by the Acting Commissioner of Social Security Carolyn W. Colvin, that he is ineligible to receive Social Security disability insurance benefits.

        Presently before the Court are the parties' cross-motions, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c), for judgment on the pleadings. For the reasons that follow, the Commissioner's motion is granted; the Plaintiff's cross-motion is denied; and the Commissioner's denial of benefits is affirmed in its entirety.

1

# I. BACKGROUND

On May 8, 2013, the Plaintiff, then 54 years old, applied for disability insurance benefits, alleging that a combination of physical and mental impairments, including carpal tunnel syndrome, bipolar disorder, sleep apnea, and obesity, preclude him from engaging in substantial gainful activity.

On August 28, 2013, the Social Security Administration ("SSA") denied his application.

On reconsideration, including a hearing held on January 8, 2015, Administrative Law Judge Alan B. Berkowitz (the "ALJ") upheld the SSA's initial determination. In particular, the ALJ issued a written decision concluding that, during the period of time from December 31, 2011 through April 3, 2015 (the "Relevant Time Period"), the Plaintiff retained the functional capacity to perform a modified range of "medium work" jobs, which existed in significant numbers in the national economy.

After the Appeals Council denied the Plaintiff's request for an additional administrative review, on July 28, 2015, the ALJ's written decision became the final decision of the Commissioner.

On September 14, 2015, the Plaintiff commenced this civil appeal.

On February 19, 2016, the Plaintiff moved under the provisions of Rule 12(c) for judgment on the pleadings, and on May 6, 2016, the Commissioner cross-moved for similar relief.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges presently raised by the Plaintiff. In this regard, references to the record are denoted as "R."

# II. DISCUSSION

A. **The Standard of Review**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998) (Spatt, J.).

Thus, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*." *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings " 'only if a reasonable factfinder would *have to conclude otherwise.*' " *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis in original). This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS 21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, " '[s]ubstantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.' " *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998), for the proposition that an ALJ's decision may be affirmed where there is substantial evidence for both sides).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

B.  **Whether the Plaintiff's Bipolar Disorder Meets or Equals a "Listed" Impairment under the Applicable Regulations**

First, the Plaintiff contends that his mental health impairment, namely, bipolar disorder, is conclusively disabling under the Act, and the ALJ erred by holding otherwise. The Court disagrees.

Under the relevant analytical framework, the ALJ was required to determine whether the Plaintiff's impairments were sufficiently severe to meet or medically equal any of the impairments enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d). If the Plaintiff suffered from one of these "listed" impairments, then the ALJ would have been required to find him disabled, regardless of other pertinent factors, such as his age, education, and work experience. *See id.*; *see also DeChirico*, 134 F.3d at 1180 ("The Social Security regulations list certain impairments, any of which is sufficient . . . to create an irrebuttable presumption of disability").

Relevant here, to be found disabled under listed impairment 12.04, entitled *Affective Disorders* ("Listing 12.04"), the Plaintiff's bipolar disorder must result in at least two of the following: "Marked restriction of activities of daily living; Marked difficulties in maintaining social functioning; Marked difficulties in maintaining concentration, persistence, or pace; [or] Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The Plaintiff bears the burden of demonstrating that his condition satisfies each of these criteria. *See Medrano v. Colvin*, No. 15-cv-3081, 2016 U.S. Dist. LEXIS 129422, at *48-*49 (E.D.N.Y. Sept. 21, 2016).

In this case, the record is clear that the ALJ applied the correct legal standard at this stage of the inquiry, *see* R. 18, and the Plaintiff does not contend otherwise. Rather, the Plaintiff takes issue with the ALJ's conclusion that the medical evidence was insufficient to conclusively establish a disability under Listing 12.04.

However, overall, the Plaintiff's argument favoring reversal is apparently misguided in that it fails to materially challenge the quality of the evidence supporting the ALJ's decision, and instead focuses exclusively on marshaling contrary evidence that apparently supports his preferred outcome. *See Bonet*, 523 F. App'x at 59 (noting that the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*"). Contrary to the Plaintiff's reasoning, the Court's review is not *de novo*, *see Pereira*, 279 F.R.D. at 205, and therefore, even accepting the premise that substantial evidence in the record also supports the Plaintiff's position, his motion for judgment on the pleadings fails because an ALJ's decision may be affirmed where there is substantial evidence for both sides, *see Mackey*, 306 F. Supp. at 340.

In any event, upon a review of the record, the Court is satisfied that the ALJ's decision was based on substantial evidence. To repeat, in order to be found disabled under Listing 12.04, the Plaintiff's bipolar disorder must have resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

Applying these criteria, the ALJ found that the Plaintiff's mental health impairment did not restrict his ability to perform the activities of daily living ("ADLs"). For this conclusion, he relied upon the medical opinion of Dr. Jerome Caiati, who, after examining him on August 13, 2013, noted that the Plaintiff lives on his own; reported the ability to cook and care for his personal needs; and passed his time reading and listening to the radio. R. 341-42. Although the Plaintiff denied the ability to clean, do laundry, and go shopping, he attributed these limitations to carpal tunnel syndrome, not to any mental health problem. R. 341.

In this regard, the ALJ noted that Dr. Caiati's impression of the Plaintiff's ability to perform ADLs was apparently consistent with the Plaintiff's own hearing testimony. Namely, the Plaintiff testified that he has lived alone for several years (R. 38); is able to get dressed (R. 49); and recreationally uses a computer for up to eight or nine hours a day (R. 50). He is able to drive, and attributed any decrease in the frequency of his driving to old age and diminished eyesight, not to any alleged mental disorder. R. 38-39.

In this regard, the ALJ also relied on progress notes from Nassau University Medical Center ("NUMC"), which noted that the Plaintiff, who appeared to have a "bright" affect and told jokes during his October 16, 2014 psychiatric evaluation, had "[n]o significant impairment in function" at that time. R. 494. He also referenced a survey completed by the Plaintiff's treating psychologist, in which Dr. Greg Haggerty indicated that the Plaintiff's ability to maintain his personal appearance and demonstrate reliability was "good," and that he had a "fair" ability to behave in a stable manner and maintain schedules. R. 432. The ALJ found these assessments to be inconsistent with a totally disabling mental condition.

The ALJ also relied heavily upon the medical opinion of Dr. Paul Herman, who, after examining the Plaintiff on August 13, 2013, found that, aside from "some" decreased concentration and "some" irritability, the Plaintiff lacked any manic or depressive symptomology. R. 347. In fact, Dr. Herman noted that the Plaintiff lacked any mental health symptoms that would so severely limit his functionality that he could not work. R. 347, 349. Relevant here, Dr. Herman noted that the Plaintiff reported difficulty performing ADLs due solely to physical issues that were outside the scope of a psychiatric evaluation. R. 348.

Based on the foregoing, the Court finds that substantial evidence in the record supported the ALJ's conclusion that the Plaintiff's mental health impairment did not markedly restrict his ability to perform the activities of daily living.

In applying the Listing 12.04 criteria, the ALJ further found that the Plaintiff's bipolar disorder resulted in only moderate difficulties in social functioning and concentration, persistence, and pace. For this, the ALJ again relied on progress notes from NUMC, which reflect that the Plaintiff occasionally attended group therapy, during which he was consistently engaged; participated in discussions and self-expressive activities; and offered support and encouragement to his peers. R. 435, 437.

The ALJ relied on the medical opinion of Dr. Haggerty, who indicated that, despite reporting an altercation with his neighbors, the Plaintiff generally had a "fair" ability to relate to co-workers, deal with the public, interact with supervisors, and follow rules. R. 430. This is generally consistent with the Plaintiff's hearing testimony that, except for occasional arguments, he does not believe he has difficulty getting along with others. R. 47, 51.

In this regard, Dr. Haggerty indicated that the Plaintiff's ability to maintain attention and concentration, as well as his ability to understand and carry out even simple job instructions, was markedly impaired. R. 430-31. However, the ALJ found this portion of the opinion to be inconsistent with the Plaintiff's demonstrated ability to perform ADLs (R. 23), as well as the findings of Dr. Herman, who, after a "comprehensive examination," found no evidence of a significant limitation in the Plaintiff's ability to follow and understand simple directions and instructions; to perform simple tasks; or to maintain attention and concentration (R. 348).

Although Dr. Herman noted some psychiatric problems, overall he found these problems to be non-disabling. Namely, he noted that the Plaintiff had a long history of episodic mood difficulties and "some" difficulty with concentration and focus, but, as stated above, concluded that these symptoms had only a limited effect on the Plaintiff's functionality. R. 346. He also observed no symptoms of mania or depression, and noted that the Plaintiff's "primary difficulties" were "some" decreased concentration and irritability. R. 346-47.

Similar to the NUMC progress notes, Dr. Herman found the Plaintiff to be cooperative with generally adequate social skills. R. 347. Namely, at the time of their meeting, the Plaintiff was casually dressed and adequately groomed; his intelligibility, quality of voice, and expressive and receptive language were all normal; and, for much of his evaluation, Dr. Herman observed the Plaintiff to be coherent and goal-oriented with no evidence of hallucinations, delusions, or paranoia. R. 347.

Accordingly, the Court finds that substantial evidence in the record supported the ALJ's conclusion that the Plaintiff's mental health impairment did not markedly restrict his social functioning or his ability to maintain concentration, persistence, and pace.

As to the fourth and final criterion in Listing 12.04, the ALJ found that the Plaintiff had experienced no documented episodes of decompensation – a result the Plaintiff does not contest.

In sum, the ALJ concluded that, since the Plaintiff's mental health impairment had not caused at least two "marked" limitations, or one "marked" limitation coupled with "repeated" episodes of decompensation, the criteria set forth in Listing 12.04 were not satisfied. R. 20-21. For the reasons set forth above, the Court finds this determination to be supported by substantial medical evidence in the record.

Accordingly, to the extent the Plaintiff seeks to overturn the ALJ's decision on the ground that his bipolar disorder should have been found to be conclusively disabling, his motion for judgment on the pleadings is denied.

## C. Whether There Are Jobs that Exist in Significant Numbers in the National Economy that the Plaintiff Can Perform

Second, the Plaintiff contends that, even assuming his bipolar disorder is *not* conclusively disabling, given his serious physical and mental limitations, the ALJ erred in concluding that the Plaintiff could perform any job that exists in significant numbers in the national economy. Again the Court disagrees.

After determining that the Plaintiff's mental health impairment neither met nor medically equaled Listing 12.04, the ALJ was required to assess whether, given his age, education, and work experience, the Plaintiff retained the functional capacity to perform his past work, and if not, whether he could make a successful adjustment to other work. *See* 20 C.F.R. § 404.1520(e); *see also Burgess*, 537 F.3d at 120 (noting that, for purposes of the Act, a claimant is not disabled if, given his or her impairment, there nevertheless exists another type of work that he or she can do).

At this stage of the inquiry, the ALJ's focus turns to the Plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(3). In doing so,

> both a "limited ability to perform certain physical demands or work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)" (20 C.F.R. § 404.1545(b)), and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting" (20 C.F.R. § 404.1545(c)), may reduce a claimant's ability to do past or other work.

*McDermott v. Colvin*, No. 14-cv-2747, 2015 U.S. Dist. LEXIS 135481, at *23-*24 (E.D.N.Y. Sept. 30, 2015).

Applying these standards, the ALJ determined that the Plaintiff retained the functional capacity to perform a modified range of "medium work" jobs, as that term is defined in 20 C.F.R. 404.1567(c). In particular, the ALJ noted that, due to his carpal tunnel syndrome and sleep apnea, the Plaintiff was limited to work that involved only occasional gripping, grasping, and fingering with his non-dominant hand. R. 25. He further noted that, due to his bipolar disorder, the Plaintiff was limited to work that involved only simple tasks and instructions; low stress, which is defined by occasional decision-making and occasional changes in work setting; and only occasional social interaction. R. 25.

At the hearing, the ALJ called an independent vocational expert to testify as to whether there were jobs that someone with the Plaintiff's limitations could realistically perform. The expert answered this question in the positive, testifying that, even assuming the limitations outlined above,

a hypothetical person with the Plaintiff's vocational profile could perform the requirements of such representative occupations as cleaner in a hospital setting; cleaner in an industrial setting; and warehouse worker – all of which are classified as unskilled positions. R. 26, 58-59.

Accordingly, to the extent that the Plaintiff retained the capacity to perform these jobs, the ALJ found that he was not disabled under the Act.

Here, again, the record is clear that the ALJ applied the correct legal standards at this stage of the inquiry, *see* R. 25-26, and the Plaintiff does not contend otherwise. Rather, the Plaintiff argues that substantial evidence does not support the ALJ's conclusion that, despite his bipolar disorder, the Plaintiff could still be expected to perform even unskilled work.

However, this theory fails at the start, as the authority upon which it rests, namely, Social Security Ruling ("SSR") 85-15, "applies only where the plaintiff suffers *solely* from nonexertional limitations, and does not apply where the plaintiff suffers from a combination of exertional and nonexertional impairments." *Prince v. Colvin*, No. 13-cv-7666, 2015 U.S. Dist. LEXIS 28447, at *56-*57 (S.D.N.Y. Mar. 9, 2015) (collecting authorities) (emphasis supplied). In this case, the Plaintiff's residual functional capacity was determined with a view toward his exertional limitations, including carpal tunnel syndrome and sleep apnea, in conjunction with his nonexertional limitations, including bipolar disorder. Therefore, contrary to the Plaintiff's contention, SSR 85-15 "has no applicability to this case." *Lugo v. Colvin*, No. 13-cv-1767, 2014 U.S. Dist. LEXIS 99936, at *36 (S.D.N.Y. July 21, 2014) (Report and Recommendation), *adopted*, 2014 U.S. Dist. LEXIS 144426 (S.D.N.Y. Oct. 9, 2014).

In any event, reliance on SSR 85-15 does not justify a different outcome. In relevant part, that agency opinion sets forth "[t]he basic mental demands of competitive, remunerative, unskilled work" – namely, the ability, on a sustained basis, "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to

deal with changes in a routine work setting." SSR 85-15, *available at* 1985 SSR LEXIS 20, at *11 (Jan. 1, 1985).

For substantially the same reasons as outlined above, the Court finds that substantial evidence in the record supports the ALJ's conclusion that the Plaintiff possessed these skills in appropriate measure. For example, Dr. Herman assessed no evidence of a significant limitation in the Plaintiff's ability to follow and understand simple directions and instructions; perform simple tasks; maintain attention and concentration; maintain a regular schedule; and learn new tasks. R. 348. Similarly, Dr. Haggerty indicated that the Plaintiff could appropriately maintain his personal appearance; that he could act reliably; and that he had a fair ability to behave in a stable manner and maintain schedules. R. 432. Dr. Haggerty further noted that the Plaintiff had a fair ability to relate to co-workers, deal with the public, interact with supervisors, and follow rules. R. 430. Critically, the Plaintiff conceded that, even after his bipolar diagnosis, he maintained self-employment and only stopped working due to physical limitations, not mental issues. R. 42.

Thus Court finds that substantial evidence supports the ALJ's conclusion that the Plaintiff could perform unskilled work. As already explained, to the extent that the Plaintiff is able to identify conflicting evidence, this alone is insufficient to justify the relief sought. *See Bonet*, 523 F. App'x at 59; *Mackey*, 306 F. Supp. at 340.

Accordingly, to the extent the Plaintiff seeks to overturn the ALJ's decision on the ground that his bipolar disorder should have been found to preclude the performance of any jobs in the unskilled labor base, his motion for judgment on the pleadings is denied.

### III. CONCLUSION

Based on the foregoing, it is hereby ordered that the Commissioner's motion under FED. R. CIV. P. 12(c) for judgment on the pleadings is GRANTED;

The Plaintiff's cross-motion under FED. R. CIV. P. 12(c) for judgment on the pleadings is DENIED; and

The July 28, 2015 final decision of the Commissioner that the Plaintiff is not entitled to Social Security disability insurance benefits for the Relevant Time Period is AFFIRMED in all respects.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York
April 15, 2017

/s/ *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge